FILED

RECEIVED

UNITED STATES DISTRICT COURT
IN MIDDLE DISTRICT OF FLORIDA

2014 OCT 28  AM 11: 05

2014 OCT 28  PM 11: 01

Keith Robert Caldwell Sr,,
    Plaintiff

)
)
)
)

v.

)
)
)

Case No. 8:14 CV 2708 T 33 EAJ
(To be assigned by Clerk of District Court)

Suzanne M. Klinker, Susan Cutchall, Sharon
Hayes and John Timberlake,
    Defendant(s)

)
)
)
)
)

## COMPLAINT

I.      State the grounds for filing this case is Federal Court (include federal statutes and/or U.S. Constitutional provisions, if you know them):

         Violation of Civil Rights and the U.S. Constitutional Rights, Violation of Florida's Baker Act

II.      Plaintiff, Keith Robert Caldwell Sr, resides at P.O. Box 47427, St. Petersburg in the county of Florida 33743

III.      Defendant(s),

         Suzanne M. Klinker lives at, or its business is located at 10000 Bay Pines Blvd. Bay Pines, Florida 33744

         Susan Cutchall lives at, or its business is located at 10000 Bay Pines Blvd, Bay Pines, Fl 33744

         Sharon Hayes lives at, or its business is located at 1501 Pasadena Ave South, St. Petersburg, Fl 33707

         John Timberlake lives at, or its business is located at 601 N. Old Coachman Road, Clearwater, Fl 33765

IV.      Statement of claim (State as briefly as possible the facts of your case. Describe how each defendant is involved. You must state exactly what each defendant personally did, or failed to do, which resulted in harm to you. Include also the names of other persons

involved, dates, and places. Be as specific as possible. You may use additional paper if necessary):

    1.    The attached complaint lists the issues/violations concerning each defendant.

V.    Relief: State briefly and exactly what you want the Court to do for you.

    Order monetary award as stipulated for each defendant in The Complaint

VI.    MONEY DAMAGES:

    A) Do you claim either actual or punitive monetary damages for the acts alleged in this complaint?   yes

    The amount $35,520,000.00 as specified/justified in the attached complaint.

VII.    Additional Information:

The Complaint:

Defendants -

Suzanne M. Klinker
Medical Center Director
Bay Pines VA Healthcare System
10000 Bay Pines Blvd
Bay Pines, FL 33744
727-398-6661 | 888-820

Susan Cutchall
Physician, Module D
Bay Pines VA Healthcare System
10000 Bay Pines Blvd
Bay Pines, FL 33744

Sharon Hayes, Executive Officer
Palms of Pasadena Hospital
1501 Pasadena Avenue South
St. Petersburg, FL 33707

John Timberlake, GM Operations Manager
Bright House Field
601 N. Old Coachman Road
Clearwater, FL 33765
727 467-4402

Plaintiff

Keith R. Caldwell Sr.,
P.O. Box 47427 St. Petersburg, FL 33743

Time span of the complaint:  August 16, 2014 - October 22, 2014


        The following complaint lays out a detail account of the substandard medical care, incompetence and malpractice, attributed to multiple organizations in the St. Petersburg/ Clearwater areas of operation. What follows in this complaint is a litany of incompetence at multiple medical facilities which violates federal codes, Florida law, and medical protocols relevant to patient care and quality of care that is expected of licensed hospitals that claim certification by federal agencies; Health and Human Services.

Defendants:

        Suzanne M. Klinker
        Medical Center Director
        Bay Pines VA Healthcare System


        Susan Cutchall
        Physician, Module D
        Bay Pines VA Healthcare System

        The following issues consists of a series of instances in which Suzanne M. Klinker and Susan Cutchall exhibited gross incompetence, malpractice, and complete disregard for the plaintiff's life, health and welfare, mental state and safety.

                                    Issue #1:

        In May 2014, the plaintiff sent an email to his primary care doctor Susan Cutchell to order a referral to the Bay Pines clinic that has primary authority to evaluate veteran qualification for a power wheelchair. The request was based on multiple unexplained falls in which the petitioner had experienced: dizziness, loss of control of lower extremities, and then blackouts.
        The plaintiff's medical condition [unexplained at the time] consisted of multiple

blackouts which began in the spring of 2012.

In February 2014, the plaintiff had a serious fall outside the Fairfield Inn at Clarksville, TN. After the February fall in which the petitioner slammed his head on concrete which resulted in a concussion, the blackouts episodes occurred multiple times on a weekly basis. The plaintiff had ruptured three discs in his lumbar region lower back.

In fact, when the plaintiff fell in February 2014, he requested a VA-provided walker as an aid to prevent slamming his head against concrete in future falls. Susan Cutchall signed the order and then VA provided the walker. Susan Cutchell was fully aware that the plaintiff has had multiple situations that included blackouts. Susan Cutchell also ordered physical therapy under the guidance of Bay Pines Dr. Shields. Dr. Shields ordered a balance test to determine the cause of the unexplained blackouts. Upon completion of part 1 of the balance test, the physician that conducted the test indicated that the plaintiff's brain and feet were not communicating with each other.

The plaintiff has been under the care of non-VA/Bay Pines physicians: Dr. Ellis Florida Pain Management Clinic, Dr. Scott Neurologist, Dr. Clarke Surgeon, and Dr. Garcia Palms of Pasadena hospital (primary care doctor for Medicare).

The plaintiff had signed release of records forms at VA/Bay Pines to obtain medical records applicable to hospitals outside of VA/Bay Pines.

Susan Cutchall was fully aware of the plaintiff's medical condition especially after the February 2014 fall in Tennessee.

Prior to the May 2014 email that the plaintiff had sent to Susan Cutchall two additional blackouts had occurred on VA/Bay Pines property. One of the two falls resulted in 8-hours at the VA/Bay Pines ER. A third blackout had occurred on Pasadena Avenue, St. Petersburg. The St. Petersburg fall required 8-hours ER treatment at Palms of Pasadena hospital.

Instead of initiating the order to begin the process of medical evaluation to determine the plaintiff's eligibility for a power wheelchair, Susan Cutchall's response to the email was that the plaintiff was not eligible for a power wheelchair.? VA/Bay Pines has established an APPROPRIATE clinic at Bay Pines to conduct such evaluations. Instead of acting responsibly given the plaintiffs history of falls and blackouts, Susan Cutchall permitted her own incompetence as a medical professional to stand in the way of providing the plaintiff medical care that was warranted, given his medical history.

A competent medical professional would have ordered:  treatment by a VA/Bay Pines Neurologist or ordered an evaluation to determine the feasibility of a power wheelchair and/or contacted the outside doctors named above to get first hand assessment of ongoing treatments outside of VA/Bay Pines. Susan Cutchall failed to act in her capacity as the VA/Bay Pines primary care physician. Susan Cutchall's incompetence and malpractice features were the basis for the plaintiff's request to remove Susan Cutchall as

his VA/Bay Pines physician. The plaintiff learned on October 15, 2014 that Bay Pines had denied the request in September 2014 (no notice provided to the plaintiff). The plaintiff learned of the denial from the Module D nurse Kathy Malek.

The VA/Bay Pines medical center was negligent in terms of providing quality medical care to the plaintiff by refusing to permit the plaintiff to FIRE Susan Cutchall. In fact the plaintiff has met other vets that have an unfavorable opinion of Susan Cutchall. One vet indicated that he had been trying for three years to remove Susan Cutchell as his primary care physician.

The VA/Bay Pines is fully committed to hiring substandard doctors that harm veterans more that they help. The VA/Bay Pines disregard for the health and welfare of veterans represents the actions of a corrupt institution top to bottom.

Issue #2

Suzanne Klinker, Director Bay Pines Medical Center committed an egregious violation of Florida's Baker Act law in September 2014.

The Baker Act is clear in regards to the circumstances and criteria relevant to this Florida law.

While a patient at Palms of Pasadena hospital, St. Petersburg, Florida, rehabilitation center, the plaintiff under the advice of the attending physician Dr. Weot, and the hospital psychiatrist, had voluntarily agreed to exercise the Baker Act in order to get a hospital bed at VA/ Bay Pines. The plaintiff's mental state had eroded during his extended hospitalization at Mease Countryside and Palms of Pasadena hospitals. For three consecutive days Dr. Weot and the Palms hospital's social worker were given the run-a-round by VA/Bay Pines in regards to the availability of a bed in the psychiatric ward at VA/Bay Pines. Eventually the Bake Act expired and Palms of Pasadena was forced to discharge the plaintiff to his home instead of mental rehabilitation.

The plaintiff is a 90% military service connected disable veteran.

The plaintiff at the time of voluntary execution of the Baker Act was actively enrolled in the Psycosocial Rehabilitation Recovery Center (PRRC) mental health program at VA/Bay Pines.

The plaintiff has been medicated on anti-depression meds since 1992 and bipolar meds since February 2014. This information is contained in the plaintiff's VA/Bay Pines medical record.

The plaintiff had been away from the VA/Bay Pines PRRC program since breaking his neck in mid-August 2014.

The absence of the PRRC program had led to instability of the plaintiff's mental state and thoughts of suicide. The plaintiff had attempted suicide in February 2014 which led to two months at Windmoor Mental Health institution and subsequent transfer to

VA/Bay Pines PRRC program. This information is contained in the plaintiff's medical records at VA/Bay Pines.

The Palms of Pasadena hospital does not have a mental health clinic. The Palms hospital was not equipped to assist a person in need of mental health resources. This was the basis for Dr. Weot and the plaintiff's agreement to transfer to VA/Bay Pines

.

For three days in September 2014 the VA/Bay Pines medical center staff had flip flopped, lied, and discouraged the transfer of the plaintiff to VA/Bay Pines for much needed mental health support. The Palms of Pasadena hospital ran out of options thus discharge was enacted on September 13, 2014.

VA/Bay Pines has an abundance of marketing crap that confuses veterans in to thinking that VA/Bay Pines actually cares. Marketing includes: VA/Bay Pines Help Hotline, Make the Connection hotline, TV commercials, bracelets chains and paraphernalia spread out over multiple departments and clinics at VA/Bay Pines, HOWEVER the VA/Bay Pines ignored a 90% disable veteran pleas when he sought mental health help.

All of a sudden the marketing crap that VA/Bay Pines has blanketed all over the medical center lost meaning to one veteran, the plaintiff.

Suzanne Klinker is running a substandard medical center built on the premise of quality medical care and medical services while staffing the facility with incompetent, unmotivated, uncommitted, untrained employees.

Following is an excerpt of the Florida Mental Health Act/Baker Act. If ever a veteran had qualified for the Baker Act the petitioner did in September 2014. The following bolded sections of the act are noted below:

The Florida Mental Health Act of 1971 (Florida Statute 394.451 (2009 rev.)), commonly known as the "Baker Act," allows the involuntary institutionalization and examination of an individual.
The Baker Act allows for involuntary examination (what some call emergency or involuntary commitment). It can be initiated by judges, law enforcement officials, physicians, or mental health professionals. There must be evidence that the person:
Possibly has a mental illness (as defined in the Baker Act).
Is a harm to self, harm to others, or self-neglectful (as defined in the Baker Act).


Title XXIX
PUBLIC HEALTH    Chapter 394
MENTAL HEALTH

394.453 Legislative intent.?It is the intent of the Legislature to authorize and direct the Department of Children and Families to evaluate, research, plan, and recommend to the Governor and the Legislature programs designed to reduce the occurrence, severity, duration, and disabling aspects of mental, emotional, and behavioral disorders. It is the intent of the Legislature that treatment programs for such disorders shall include, but not be limited to, comprehensive health, social, educational, and rehabilitative services to persons requiring intensive short-term and continued treatment in order to encourage them to assume responsibility for their treatment and recovery. It is intended that such persons be provided with emergency service and temporary detention for evaluation when required; that they be admitted to treatment facilities on a voluntary basis when extended or continuing care is needed and unavailable in the community; that involuntary placement be provided only when expert evaluation determines that it is necessary; that any involuntary treatment or examination be accomplished in a setting which is clinically appropriate and most likely to facilitate the person?s return to the community as soon as possible; and that individual dignity and human rights be guaranteed to all persons who are admitted to mental health facilities or who are being held under s. 394.463. It is the further intent of the Legislature that the least restrictive means of intervention be employed based on the individual needs of each person, within the scope of available services. It is the policy of this state that the use of restraint and seclusion on clients is justified only as an emergency safety measure to be used in response to imminent danger to the client or others. It is, therefore, the intent of the Legislature to achieve an ongoing reduction in the use of restraint and seclusion in programs and facilities serving persons with mental illness.

Issue #3

The plaintiff broke multiple areas of his neck during a blackout episode that occurred at Bright House Field on August 16, 2014. The plaintiff had cervical spine surgery at Mease Countryside hospital at Clearwater, Florida. The plaintiff was transferred to Palms of Pasadena hospital for rehabilitation on September 2, 2014.

While a patient at Palms of Pasadena one of the attending physicians diagnosed the plaintiff as having Shy Dragger Syndrome. The SDS contributed to the episodic dizziness, loss of balance, and subsequent blackouts. In fact the plaintiff had exhibited all the symptoms since 2012. Until September 2014, no other physician had diagnosed a medical cause for the blackout episodes. In fact Dr. Shepherd had noted that all the symptoms had applied to my case. Dr. Shepherd informed the plaintiff that his other patients diagnosed with SDS are confined to a wheelchair.

Immediately my attention moved to the request that I had submitted to Susan Cutchall in May 2014 for a power wheelchair. Eventually my illness will confine me to a wheelchair. In fact I have reason to believe that the physicians at VA/Bay Pines may have arrived at the same diagnosis had Susan Cutchall not tripped over her own incompetence and malpractice when she determined that the plaintiff was not eligible for a power wheelchair.

The SDS has no definitive treatment thus it is a terminal illness.

The plaintiff has not concluded that Susan Cutchall was the cause of the SDS diagnosis. The plaintiff's claim is that Susan Cutchall had failed to initiate responsible actions. Susan Cutchall did not bother to permit VA/Bay Pines medical experts the opportunity to arrive at a plausible medical response to the plaintiff's: blackout episodes, loss of bladder control, speech and cognitive degradation, stenosis, dizziness, loss of balance and motor control.

However, the plaintiff has concluded after medical care at Mease Countryside hospital and Palms of Pasadena hospital that breaking his neck on August 16, 2014 should not have happened.  If the plaintiff had been in a wheelchair at Bright House Field on August 16, 2014, the handicap section would have been an option thus the dizziness and blackout episode may have been avoided.

Issue #4

Upon discharge from Palms of Pasadena hospital in September 2014, due to VA/Bay Pines refusal to honor the Baker Act directive the plaintiff was ordered to participate in  physical therapy, home healthcare, and occupational therapy at BayCare 9/8/2014 through 10/1/2014. Subsequently the plaintiff filed notice to VA/Bay Pines that he wanted Susan Cutchall removed as his primary care physician. By then, it was the plaintiff's belief that he could get better care from a pack of wolves. Consequently, feeling more compelled to support an incompetent VA/Bay Pines physician than concern for the plaintiff's medical care, the VA/Bay Pines denied the plaintiff's request to fire Susan Cutchall from his medical care team.
VA/Bay Pines decision to deny the plaintiff's request was unprecedented. VA/Bay Pines does not have explicit authority granted by the congress or the federal HHS to deny a veterans request to remove mediocre physicians from his care. If the plaintiff's situation had involved a civilian medical facility, that facility would be sued. VA/Bay Pines was not vested with the authority to essentially stipulate to the plaintiff that he is stuck with Susan Cutchall regardless of her incompetence. VA/Bay Pines had essentially dared the petitioner to file a lawsuit.

The plaintiff believes the VA/Bay Pines Director refused to remove Susan Cutchall to avoid appearing as though Bay Pines supported the plaintiff's assessment of Susan Cutchell and potential liability for her incompetence relevant to the plaintiff's medical care. The VA/Bay Pines director should have removed Susan Cutchall as requested, and then

ordered a review of the medical care provided to the plaintiff from 2013 - 2014. The director instead opted to erect a bulletproof fence around an incompetent physician and simply dared the plaintiff to turn this matter over to the courts. The plaintiff has obliged.

(1) The plaintiff asks the court to order restitution in the amount of $35,000,000.00. In return no additional lawsuits will be filed against VA/Bay Pines by the plaintiff and/ or, his three sons upon his death. This level of restitution is sufficient for the degree of neglect and incompetence. The plaintiff will be in a wheelchair for the remainder of his life.

(2) The plaintiff asks the court to order VA/Bay Pines to provide a power wheelchair for the plaintiff use. As stipulated above in this complaint, had Susan Cutchell provided a referral to the APPROPRIATE VA/Bay Pines clinic in May 2014, the tragic circumstance at Bright House Field would have been avoidable.

(3) The plaintiff asks the court to order VA/Bay Pines to remove Susan Cutchall as the petitioner's primary doctor. VA/Bay Pines decision to deny the plaintiff's request in September 2014 is a blatant disregard for his medical care/life. The plaintiff should not be forced to leave his medical care in the hands of Susan Cutchell after her demonstrated incompetence.

_____

Defendant John Timberlake, GM Operations Manager
Bright House Field

On August 16, 2014 the plaintiff was injured while attending a Philadelphia Phillies farm team baseball game at Bright House Field (BHF). The plaintiff sustained significant neck injuries that required surgery extended hospitalization and physical therapy.

Prior to the injury, the plaintiff had asked the BHF associate manning section 113 to permit him to sit in the handicap section at the top of the bleacher area. The associate informed the plaintiff that seating in the handicap area requires a special ticket. The plaintiff proceeded to his assigned seat in section 113.

After 1.5 innings of baseball the plaintiff decided to go to the concession stand to order ice cream. After the purchase of ice cream, the plaintiff attempted to return to his assigned seat. While descending the bleachers the plaintiff became dizzy, wobbly and then blackout occurred. The plaintiff's head hit the guard rail and he was slammed to the ground. The blackout period was unknown. But it was clear afterwards that a concussion had occurred.

The EMT staff then prepped the plaintiff for transport to a medical facility. The plaintiff had requested transport to VA/ Bay Pines medical center. The EMT staff indicated that a head injury required transport to the nearest medical facility. The plaintiff was transported to Mease Countryside hospital at Clearwater, Florida. The plaintiff had learned later that the EMTs were required to transport to the facility of the plaintiff's choice.

While the Bright House Field response to the plaintiff's medical situation was as professional as can be expected, the fact that the staff had denied the plaintiff request to be seated in the handicap section, Bright House Field assumes some responsibility. The plaintiff had a cane but no wheelchair.

The plaintiff asks the court to order restitution in the amount of $20,000.00. In return no follow up lawsuits will be filed against Bright House Field/City of Clearwater/Philadelphia Phillies organizations by the plaintiff and or, his three sons upon his death.


Defendant Sharon Hayes, Executive Officer
Palms of Pasadena Hospital

On September 2, 2014, Palms of Pasadena hospital [Palms] contacted Mease Countryside hospital to agree that Palms would admit the plaintiff for rehabilitation post-surgery. Palms staff was provided a list of the meds that the plaintiff was taking at the time of his discharge from Mease Countryside. The plaintiff's med list profile consists of meds that have been provided 10-years or longer.

Upon transport to Palms on September 2, 2014, the plaintiff was informed by the rehab RNs that the Palms pharmacy had declined to fill several of the plaintiff's meds; the pharmacy requested justification statements on each of the meds that they had declined to fill. The plaintiff was in his room until midnight dictating justification statements to RNs for his med list that was established more than a decade. The plaintiff fell asleep with several of the meds not provided.


The person at the pharmacy making the requests for justification was NOT a licensed pharmacist. Perhaps the person was in his or her first year of school practicing for an exam. Either way the person had lacked the requisite expertise/credentials to manage a hospital pharmacy after hours. The pseudo pharmacists had no legal authority refuse to provide required medications.

On September 3, 2014 the hospital management staff, the ACTUAL pharmacist, and a patient advocate entered the plaintiff's room to apologize for the clumsy manner in which he was admitted the previous night. They noted that the person on duty did not have the authority to withhold meds.

Upon notification by Dr. Sheppard of the SDS diagnosis, the plaintiff requested Dr. Weot attending physician, to order the staff to coordinate with BayCare to get the process started to procure a power wheelchair through Medicare. For nearly 10-days the plaintiff had inquired about the status of the wheelchair process. Dr. Weot had assigned the task to

the Palms social worker. The social worker had informed the plaintiff several times that she had started the process. The plaintiff had learned after his discharge that BayCare never received a request for the wheelchair. Dr. Weot and the social worker had lied to the plaintiff for more than 10-days.

Dr. Weot had ordered changes to the plaintiff's med list. Two new meds were added and the dose was changed on two other meds. At the time of discharge Dr. Weot failed to provide scripts for the new medications and scripts for the changed meds. On Monday of the following week the plaintiff went to see his primary doctor to get scripts but they could not be produced without Dr. Weot?s medical notes. The medical notes were not yet posted. This was an episode of the keystone cops and Albert & Costello's reenactment of who's on first? Incompetence was running amuck.

The story does not end with Dr. Weot?s incompetence. Because the social worker failed to order a standard wheel chair and a two-wheel walker (despite telling Dr. Weot and the plaintiff that it was on order to arrive at discharge). Nonetheless neither aide was available prior to discharge. Once again the social worker was doling out lies in lieu of medical service and Dr. Weot was just going through the motions.

The nurse on duty had to discharge the plaintiff in a wheelchair labeled PROPERTY OF REHAB PALMS. The plaintiff had to entertain questions in regards to potentially stealing the wheelchair from Palms hospital. That was humiliating.
Long after discharge from Palms, BayCare arrived at the plaintiff's apartment with the standard wheelchair and the two-wheel walker. Both were ordered after discharge, NOT before discharge as stated by the social worker.
The plaintiff prepared a two-page memo stating specific concerns, lack of professionalism, errors, and incompetence, etc. The memo was hand-carried to the hospital administrator staff and signed for by the deputy administrator. Palms hospital did not bother to respond to the concerns in the memo. The Palms Administrator treated the issues as though they were standard operating procedure. No one in the Palms front office bothered to say sorry!
As an expert (doctorate) on the issue of leadership, the plaintiff accurately accessed that Palms hospital has significant leadership concerns; front office to the basement. There are too many staff members just collecting a paycheck. While the front office rakes in the $ the board of directors is left explaining the lawsuits that unfold relevant to crappy medical service/advice.

The plaintiff asks the court ordered restitution in the amount of $500,000.00. In return no follow up lawsuits will be filed against Palms of Pasadena by the plaintiff and or, his three sons upon his death.

The only organization involved in this matter not sued is Mease Countryside hospital in Clearwater. The surgeons were excellent and dedicated medical professionals. The RN's ditto? The folks in the kitchen ditto? The techs and wheelchair escorts ditto? The labs ditto? The pharmacy ditto? Etc...

Did Mease Countryside hospital in fact steer all the professional medical personnel in the St. Petersburg/Clearwater areas away from VA/Bay Pines and Palms of Pasadena hospital?

Basis of Jurisdiction:  3 – (U.S. Government Not a Party)

Nature of suit:  362 Personal injury Med. Malpractice.

Origin: Original proceeding.

Cause of action: Malpractice /Reckless life threatening medical care/Disregard for mental and emotional health. U.S. Civil Rights/Constitutional rights/ Florida Backer Act. Violation of the Baker Act. Cause of action: U.S. Civil Rights/Constitutional rights/ Florida Backer Act. Title XXIX Public Health Mental Health Chapter 394.

Jury: Plaintiff does not waive his constitutional right for a jury to try this lawsuit.

Requested in the complaint:  $35,520,000.00 (Bay Pines - $35,000,000.00, Palms of Pasadena - $20,000.00, Bright House Field - $500,000.00.

Keith R. Caldwell Sr.
P.O. Box 47427
St. Petersburg, FL 33743


Signature of Plaintiff                                    October 27, 2014_____
P.O. Box 47427                                            Date
(571) 330-8270
kcall0810@aol.com

# THE COMPLAINT:

**Defendants -**

Suzanne M. Klinker
Medical Center Director
Bay Pines VA Healthcare System
10000 Bay Pines Blvd
Bay Pines, FL 33744
727-398-6661 | 888-820

Susan Cutchall
Physician, Module D
Bay Pines VA Healthcare System
10000 Bay Pines Blvd
Bay Pines, FL 33744

Sharon Hayes, Executive Officer
Palms of Pasadena Hospital
1501 Pasadena Avenue South
St. Petersburg, FL 33707

John Timberlake, GM Operations Manager
Bright House Field
601 N. Old Coachman Road
Clearwater, FL 33765
727 467-4402

**Plaintiff**

Keith R. Caldwell Sr.,
P.O. Box 47427 St. Petersburg, FL 33743

Time span of the complaint:  August 16, 2014 - October 22, 2014

The following complaint lays out a detail account of the substandard medical care, incompetence and malpractice, attributed to multiple organizations in the St. Petersburg/ Clearwater areas of operation. What follows in this complaint is a litany of incompetence at multiple medical facilities which violates federal codes, Florida law, and medical protocols relevant to patient care and quality of care that is expected of licensed hospitals that claim certification by federal agencies; Health and Human Services.

Defendants:

    Suzanne M. Klinker
    Medical Center Director
    Bay Pines VA Healthcare System


    Susan Cutchall
    Physician, Module D
    Bay Pines VA Healthcare System

The following issues consists of a series of instances in which Suzanne M. Klinker and Susan Cutchall exhibited gross incompetence, malpractice, and complete disregard for the plaintiff's life, health and welfare, mental state and safety.

Issue #1:

In May 2014, the plaintiff sent an email to his primary care doctor Susan Cutchell to order a referral to the Bay Pines clinic that has primary authority to evaluate veteran qualification for a power wheelchair. The request was based on multiple unexplained falls in which the petitioner had experienced: dizziness, loss of control of lower extremities, and then blackouts.

The plaintiff's medical condition [unexplained at the time] consisted of multiple blackouts which began in the spring of 2012.

In February 2014, the plaintiff had a serious fall outside the Fairfield Inn at Clarksville, TN. After the February fall in which the petitioner slammed his head on concrete which resulted in a concussion, the blackouts episodes occurred multiple times on a weekly basis. The plaintiff had ruptured three discs in his lumbar region lower back.

In fact, when the plaintiff fell in February 2014, he requested a VA-provided walker as an aid to prevent slamming his head against concrete in future falls. Susan Cutchall signed the order and then VA provided the walker. Susan Cutchell was fully aware that the plaintiff has had multiple situations that included blackouts. Susan Cutchell also ordered physical therapy under the guidance of Bay Pines Dr. Shields. Dr. Shields ordered a balance test to determine the cause of the unexplained blackouts. Upon completion of part 1 of the balance test, the physician that conducted the test indicated that the plaintiff's brain and feet were not communicating with each other.

The plaintiff has been under the care of non-VA/Bay Pines physicians: Dr. Ellis

Florida Pain Management Clinic, Dr. Scott Neurologist, Dr. Clarke Surgeon, and Dr. Garcia Palms of Pasadena hospital (primary care doctor for Medicare).

The plaintiff had signed release of records forms at VA/Bay Pines to obtain medical records applicable to hospitals outside of VA/Bay Pines.

Susan Cutchall was fully aware of the plaintiff's medical condition especially after the February 2014 fall in Tennessee.

Prior to the May 2014 email that the plaintiff had sent to Susan Cutchall two additional blackouts had occurred on VA/Bay Pines property. One of the two falls resulted in 8-hours at the VA/Bay Pines ER. A third blackout had occurred on Pasadena Avenue, St. Petersburg. The St. Petersburg fall required 8-hours ER treatment at Palms of Pasadena hospital.

Instead of initiating the order to begin the process of medical evaluation to determine the plaintiff's eligibility for a power wheelchair, Susan Cutchall's response to the email was that the plaintiff was not eligible for a power wheelchair. VA/Bay Pines has established an APPROPRIATE clinic at Bay Pines to conduct such evaluations. Instead of acting responsibly given the plaintiffs history of falls and blackouts, Susan Cutchall permitted her own incompetence as a medical professional to stand in the way of providing the plaintiff medical care that was warranted, given his medical history.

A competent medical professional would have ordered: treatment by a VA/Bay Pines Neurologist or ordered an evaluation to determine the feasibility of a power wheelchair and/or contacted the outside doctors named above to get first hand assessment of ongoing treatments outside of VA/Bay Pines. Susan Cutchall failed to act in her capacity as the VA/Bay Pines primary care physician. Susan Cutchall's incompetence and malpractice features were the basis for the plaintiff's request to remove Susan Cutchall as his VA/Bay Pines physician. The plaintiff learned on October 15, 2014 that Bay Pines had denied the request in September 2014 (no notice provided to the plaintiff). The plaintiff learned of the denial from the Module D nurse Kathy Malek.

The VA/Bay Pines medical center was negligent in terms of providing quality medical care to the plaintiff by refusing to permit the plaintiff to FIRE Susan Cutchall. In fact the plaintiff has met other vets that have an unfavorable opinion of Susan Cutchall. One vet indicated that he had been trying for three years to remove Susan Cutchell as his primary care physician.

The VA/Bay Pines is fully committed to hiring substandard doctors that harm veterans more that they help. The VA/Bay Pines disregard for the health and welfare of veterans represents the actions of a corrupt institution top to bottom.

Issue #2

Suzanne Klinker, Director Bay Pines Medical Center committed an egregious violation of Florida's Baker Act law in September 2014.

The Baker Act is clear in regards to the circumstances and criteria relevant to this Florida law.

While a patient at Palms of Pasadena hospital, St. Petersburg, Florida, rehabilitation center, the plaintiff under the advice of the attending physician Dr. Weot, and the hospital psychiatrist, had voluntarily agreed to exercise the Baker Act in order to get a hospital bed at VA/ Bay Pines. The plaintiff's mental state had eroded during his extended hospitalization at Mease Countryside and Palms of Pasadena hospitals. For three consecutive days Dr. Weot and the Palms hospital's social worker were given the run-a-round by VA/Bay Pines in regards to the availability of a bed in the psychiatric ward at VA/Bay Pines. Eventually the Bake Act expired and Palms of Pasadena was forced to discharge the plaintiff to his home instead of mental rehabilitation.

The plaintiff is a 90% military service connected disable veteran.

The plaintiff at the time of voluntary execution of the Baker Act was actively enrolled in the Psycosocial Rehabilitation Recovery Center (PRRC) mental health program at VA/Bay Pines.

The plaintiff has been medicated on anti-depression meds since 1992 and bipolar meds since February 2014. This information is contained in the plaintiff's VA/Bay Pines medical record.

The plaintiff had been away from the VA/Bay Pines PRRC program since breaking his neck in mid-August 2014.

The absence of the PRRC program had led to instability of the plaintiff's mental state and thoughts of suicide. The plaintiff had attempted suicide in February 2014 which led to two months at Windmoor Mental Health institution and subsequent transfer to VA/Bay Pines PRRC program. This information is contained in the plaintiff's medical records at VA/Bay Pines.

The Palms of Pasadena hospital does not have a mental health clinic. The Palms hospital was not equipped to assist a person in need of mental health resources. This was the basis for Dr. Weot and the plaintiff's agreement to transfer to VA/Bay Pines
.

For three days in September 2014 the VA/Bay Pines medical center staff had flip flopped, lied, and discouraged the transfer of the plaintiff to VA/Bay Pines for much needed mental health support. The Palms of Pasadena hospital ran out of options thus discharge was enacted on September 13, 2014.

VA/Bay Pines has an abundance of marketing crap that confuses veterans in to thinking that VA/Bay Pines actually cares. Marketing includes: VA/Bay Pines Help Hotline, Make the Connection hotline, TV commercials, bracelets chains and paraphernalia spread out over multiple departments and clinics at VA/Bay Pines, HOWEVER the

VA/Bay Pines ignored a 90% disable veteran pleas when he sought mental health help.

All of a sudden the marketing crap that VA/Bay Pines has blanketed all over the medical center lost meaning to one veteran, the plaintiff.

Suzanne Klinker is running a substandard medical center built on the premise of quality medical care and medical services while staffing the facility with incompetent, unmotivated, uncommitted, untrained employees.

Following is an excerpt of the Florida Mental Health Act/Baker Act. If ever a veteran had qualified for the Baker Act the petitioner did in September 2014. The following bolded sections of the act are noted below:

The Florida Mental Health Act of 1971 (Florida Statute 394.451 (2009 rev.)), commonly known as the "Baker Act," allows the involuntary institutionalization and examination of an individual.
The Baker Act allows for involuntary examination (what some call emergency or involuntary commitment). It can be initiated by judges, law enforcement officials, physicians, or mental health professionals. There must be evidence that the person:
Possibly has a mental illness (as defined in the Baker Act).
Is a harm to self, harm to others, or self-neglectful (as defined in the Baker Act).


Title XXIX
PUBLIC HEALTH     Chapter 394
MENTAL HEALTH


394.453 Legislative intent.?It is the intent of the Legislature to authorize and direct the Department of Children and Families to evaluate, research, plan, and recommend to the Governor and the Legislature programs designed to reduce the occurrence, severity, duration, and disabling aspects of mental, emotional, and behavioral disorders. It is the intent of the Legislature that treatment programs for such disorders shall include, but not be limited to, comprehensive health, social, educational, and rehabilitative services to persons requiring intensive short-term and continued treatment in order to encourage them to assume responsibility for their treatment and recovery. It is intended that such persons be provided with emergency service and temporary detention for evaluation when required; that they be admitted to treatment facilities on a voluntary basis when extended or continuing care is needed and unavailable in the community; that involuntary placement be provided only when expert evaluation determines that it is necessary; that any involuntary treatment or examination be accomplished in a setting which is clinically appropriate and most likely to facilitate the person?s return to the community as soon as possible; and that individual dignity and human rights be guaranteed to all persons who are admitted to mental health facilities or who are being held under s. 394.463. It is the further intent of the

Legislature that the least restrictive means of intervention be employed based on the individual needs of each person, within the scope of available services. It is the policy of this state that the use of restraint and seclusion on clients is justified only as an emergency safety measure to be used in response to imminent danger to the client or others. It is, therefore, the intent of the Legislature to achieve an ongoing reduction in the use of restraint and seclusion in programs and facilities serving persons with mental illness.

Issue #3

The plaintiff broke multiple areas of his neck during a blackout episode that occurred at Bright House Field on August 16, 2014. The plaintiff had cervical spine surgery at Mease Countryside hospital at Clearwater, Florida. The plaintiff was transferred to Palms of Pasadena hospital for rehabilitation on September 2, 2014.

While a patient at Palms of Pasadena one of the attending physicians diagnosed the plaintiff as having Shy Dragger Syndrome. The SDS contributed to the episodic dizziness, loss of balance, and subsequent blackouts. In fact the plaintiff had exhibited all the symptoms since 2012. Until September 2014, no other physician had diagnosed a medical cause for the blackout episodes. In fact Dr. Shepherd had noted that all the symptoms had applied to my case. Dr. Shepherd informed the plaintiff that his other patients diagnosed with SDS are confined to a wheelchair.

Immediately my attention moved to the request that I had submitted to Susan Cutchall in May 2014 for a power wheelchair. Eventually my illness will confine me to a wheelchair. In fact I have reason to believe that the physicians at VA/Bay Pines may have arrived at the same diagnosis had Susan Cutchall not tripped over her own incompetence and malpractice when she determined that the plaintiff was not eligible for a power wheelchair.

The SDS has no definitive treatment thus it is a terminal illness.

The plaintiff has not concluded that Susan Cutchall was the cause of the SDS diagnosis. The plaintiff's claim is that Susan Cutchall had failed to initiate responsible actions. Susan Cutchall did not bother to permit VA/Bay Pines medical experts the opportunity to arrive at a plausible medical response to the plaintiff's: blackout episodes, loss of bladder control, speech and cognitive degradation, stenosis, dizziness, loss of balance and motor control.

However, the plaintiff has concluded after medical care at Mease Countryside hospital and Palms of Pasadena hospital that breaking his neck on August 16, 2014 should not have happened. If the plaintiff had been in a wheelchair at Bright House Field on August 16, 2014, the handicap section would have been an option thus the dizziness and blackout episode may have been avoided.

Issue #4

Upon discharge from Palms of Pasadena hospital in September 2014, due to VA/Bay Pines refusal to honor the Baker Act directive the plaintiff was ordered to participate in physical therapy, home healthcare, and occupational therapy at BayCare 9/8/2014 through 10/1/2014. Subsequently the plaintiff filed notice to VA/Bay Pines that he wanted Susan Cutchall removed as his primary care physician. By then, it was the plaintiff's belief that he could get better care from a pack of wolves. Consequently, feeling more compelled to support an incompetent VA/Bay Pines physician than concern for the plaintiff's medical care, the VA/Bay Pines denied the plaintiff's request to fire Susan Cutchall from his medical care team.

VA/Bay Pines decision to deny the plaintiff's request was unprecedented. VA/Bay Pines does not have explicit authority granted by the congress or the federal HHS to deny a veterans request to remove mediocre physicians from his care. If the plaintiff's situation had involved a civilian medical facility, that facility would be sued. VA/Bay Pines was not vested with the authority to essentially stipulate to the plaintiff that he is stuck with Susan Cutchall regardless of her incompetence. VA/Bay Pines had essentially dared the petitioner to file a lawsuit.

The plaintiff believes the VA/Bay Pines Director refused to remove Susan Cutchall to avoid appearing as though Bay Pines supported the plaintiff's assessment of Susan Cutchell and potential liability for her incompetence relevant to the plaintiff's medical care. The VA/Bay Pines director should have removed Susan Cutchall as requested, and then ordered a review of the medical care provided to the plaintiff from 2013 - 2014. The director instead opted to erect a bulletproof fence around an incompetent physician and simply dared the plaintiff to turn this matter over to the courts. The plaintiff has obliged.

(1)     The plaintiff asks the court to order restitution in the amount of $35,000,000.00. In return no additional lawsuits will be filed against VA/Bay Pines by the plaintiff and/ or, his three sons upon his death. This level of restitution is sufficient for the degree of neglect and incompetence. The plaintiff will be in a wheelchair for the remainder of his life.

(2)     The plaintiff asks the court to order VA/Bay Pines to provide a power wheelchair for the plaintiff use. As stipulated above in this complaint, had Susan Cutchell provided a referral to the APPROPRIATE VA/Bay Pines clinic in May 2014, the tragic circumstance at Bright House Field would have been avoidable.

(3)     The plaintiff asks the court to order VA/Bay Pines to remove Susan Cutchall as the petitioner's primary doctor. VA/Bay Pines decision to deny the plaintiff's request in September 2014 is a blatant disregard for his medical care/life. The plaintiff should not be forced to leave his medical care in the hands of Susan Cutchell after her demonstrated incompetence.

Defendant John Timberlake, GM Operations Manager
Bright House Field

On August 16, 2014 the plaintiff was injured while attending a Philadelphia Phillies farm team baseball game at Bright House Field (BHF). The plaintiff sustained significant neck injuries that required surgery extended hospitalization and physical therapy.

Prior to the injury, the plaintiff had asked the BHF associate manning section 113 to permit him to sit in the handicap section at the top of the bleacher area. The associate informed the plaintiff that seating in the handicap area requires a special ticket. The plaintiff proceeded to his assigned seat in section 113.

After 1.5 innings of baseball the plaintiff decided to go to the concession stand to order ice cream. After the purchase of ice cream, the plaintiff attempted to return to his assigned seat. While descending the bleachers the plaintiff became dizzy, wobbly and then blackout occurred. The plaintiff's head hit the guard rail and he was slammed to the ground. The blackout period was unknown. But it was clear afterwards that a concussion had occurred.

The EMT staff then prepped the plaintiff for transport to a medical facility. The plaintiff had requested transport to VA/ Bay Pines medical center. The EMT staff indicated that a head injury required transport to the nearest medical facility. The plaintiff was transported to Mease Countryside hospital at Clearwater, Florida. The plaintiff had learned later that the EMTs were required to transport to the facility of the plaintiff's choice.

While the Bright House Field response to the plaintiff's medical situation was as professional as can be expected, the fact that the staff had denied the plaintiff request to be seated in the handicap section, Bright House Field assumes some responsibility. The plaintiff had a cane but no wheelchair.

The plaintiff asks the court to order restitution in the amount of $20,000.00. In return no follow up lawsuits will be filed against Bright House Field/City of Clearwater/Philadelphia Phillies organizations by the plaintiff and or, his three sons upon his death.

Defendant Sharon Hayes, Executive Officer
Palms of Pasadena Hospital

On September 2, 2014, Palms of Pasadena hospital [Palms] contacted Mease Countryside hospital to agree that Palms would admit the plaintiff for rehabilitation post-surgery. Palms staff was provided a list of the meds that the plaintiff was taking at the time of his discharge from Mease Countryside. The plaintiff's med list profile consists of meds that have been provided 10-years or longer.

Upon transport to Palms on September 2, 2014, the plaintiff was informed by the rehab RNs that the Palms pharmacy had declined to fill several of the plaintiff's meds; the pharmacy requested justification statements on each of the meds that they had declined to fill. The plaintiff was in his room until midnight dictating justification statements to RNs for his med list that was established more than a decade. The plaintiff fell asleep with several of the meds not provided.

The person at the pharmacy making the requests for justification was NOT a licensed pharmacist. Perhaps the person was in his or her first year of school practicing for an exam. Either way the person had lacked the requisite expertise/credentials to manage a hospital pharmacy after hours. The pseudo pharmacists had no legal authority refuse to provide required medications.

On September 3, 2014 the hospital management staff, the ACTUAL pharmacist, and a patient advocate entered the plaintiff's room to apologize for the clumsy manner in which he was admitted the previous night. They noted that the person on duty did not have the authority to withhold meds.

Upon notification by Dr. Sheppard of the SDS diagnosis, the plaintiff requested Dr. Weot attending physician, to order the staff to coordinate with BayCare to get the process started to procure a power wheelchair through Medicare. For nearly 10-days the plaintiff had inquired about the status of the wheelchair process. Dr. Weot had assigned the task to the Palms social worker. The social worker had informed the plaintiff several times that she had started the process. The plaintiff had learned after his discharge that BayCare never received a request for the wheelchair. Dr. Weot and the social worker had lied to the plaintiff for more than 10-days.

Dr. Weot had ordered changes to the plaintiff's med list. Two new meds were added and the dose was changed on two other meds. At the time of discharge Dr. Weot failed to provide scripts for the new medications and scripts for the changed meds. On Monday of the following week the plaintiff went to see his primary doctor to get scripts but they could not be produced without Dr. Weot's medical notes. The medical notes were not yet posted. This was an episode of the keystone cops and Albert & Costello?s reenactment of who's on first? Incompetence was running amuck.

The story does not end with Dr. Weot's incompetence. Because the social worker failed to order a standard wheel chair and a two-wheel walker (despite telling Dr. Weot and the plaintiff that it was on order to arrive at discharge). Nonetheless neither aide was available prior to discharge. Once again the social worker was doling out lies in lieu of medical service and Dr. Weot was just going through the motions.

The nurse on duty had to discharge the plaintiff in a wheelchair labeled PROPERTY OF REHAB PALMS. The plaintiff had to entertain questions in regards to potentially stealing the wheelchair from Palms hospital. That was humiliating.

Long after discharge from Palms, BayCare arrived at the plaintiff's apartment with the standard wheelchair and the two-wheel walker. Both were ordered after discharge, NOT before discharge as stated by the social worker.

The plaintiff prepared a two-page memo stating specific concerns, lack of professionalism, errors, and incompetence, etc. The memo was hand-carried to the hospital administrator staff and signed for by the deputy administrator. Palms hospital did not bother to respond to the concerns in the memo. The Palms Administrator treated the issues as though they were standard operating procedure. No one in the Palms front office bothered to say sorry!

As an expert (doctorate) on the issue of leadership, the plaintiff accurately accessed that Palms hospital has significant leadership concerns; front office to the basement. There are too many staff members just collecting a paycheck. While the front office rakes in the $ the board of directors is left explaining the lawsuits that unfold relevant to crappy medical service/advice.

The plaintiff asks the court ordered restitution in the amount of $500,000.00. In return no follow up lawsuits will be filed against Palms of Pasadena by the plaintiff and or, his three sons upon his death.

The only organization involved in this matter not sued is Mease Countryside hospital in Clearwater. The surgeons were excellent and dedicated medical professionals. The RN's ditto? The folks in the kitchen ditto? The techs and wheelchair escorts ditto? The labs ditto? The pharmacy ditto? Etc...

Did Mease Countryside hospital in fact steer all the professional medical personnel in the St. Petersburg/Clearwater areas away from VA/Bay Pines and Palms of Pasadena hospital?

Basis of Jurisdiction:  3 – (U.S. Government Not a Party)

Nature of suit:  362 Personal injury Med. Malpractice.

Origin: Original proceeding.

Cause of action: Malpractice /Reckless life threatening medical care/Disregard for mental and emotional health. U.S. Civil Rights/Constitutional rights/ Florida Backer Act. Violation of the Baker Act. Cause of action: U.S. Civil Rights/Constitutional rights/ Florida Backer Act. Title XXIX Public Health Mental Health Chapter 394.

Jury: Plaintiff does not waive his constitutional right for a jury to try this lawsuit.

Requested in the complaint:  $35,520,000.00 (Bay Pines - $35,000,000.00, Palms of Pasadena - $20,000.00, Bright House Field - $500,000.00

Keith R. Caldwell Sr.
P.O. Box 47427
St. Petersburg, FL 33743

Signature of Plaintiff                          October 27, 2014_____
P.O. Box 47427                                  Date
(571) 330-8270
kcall0810@aol.com

Signature of attorney or pro se Plaintiff       Date: October 27, 2014

# United States District Court
# for the Middle District of Florida

## Your E-ProSe Forms Package



CIVIL COMPLAINT

# Keith Caldwell Sr,
# October 27, 2014

Verify the accuracy of all information on your forms prior to filing.

Sign and date each form.

Please complete the Civil Cover Sheet with assistance from a deputy clerk at the front counter.

Either file a completed *Motion to Proceed In Forma Pauperis and Financial Affidavit* or submit a check for $400.00 to cover the filing fee.