UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEITH ROBERT CALDWELL, SR.,

      Plaintiff,

v.                          Case No. 8:14-cv-2708-T-33EAJ

U.S. DEPARTMENT OF VETERANS
ADMINISTRATION, U.S. DEPARTMENT
OF HEALTH & HUMAN SERVICES, and
HOSPITAL CORPORATION OF AMERICA
HOLDINGS, INC.,

      Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to the Motion to Dismiss Third Amended Complaint filed by the United States on February 20, 2015. (Doc. # 33). Plaintiff Keith Robert Caldwell, Sr. filed a pro se Response in Opposition to the Motion on March 31, 2015. (Doc. # 35). The Court grants the Motion.

**I.**  **Background**

This case has a complex procedural history, as can be discerned from the fact that the Government's present Motion to Dismiss is aimed at Caldwell's construed Third Amended Complaint. Without touching upon the merits of the action, the Court preliminarily notes that Caldwell's submissions, including his Third Amended Complaint, are presented in narrative form, are not organized into numbered paragraphs or

counts, and are peppered with aspersions and profanities. Nonetheless, the Court will attempt to accurately describe the facts leading to the filing of this lawsuit as follows.

### A.   Caldwell's Medical Condition

Caldwell "is a 90% military service connected disable[d] veteran." (Doc. # 32 at 11). Caldwell has suffered from blackout and falling episodes since the Spring of 2012. (Id. at 9). In February of 2014, Caldwell fell in Tennessee and sustained a concussion. (Id.). "After the February 2014 incident, the episodic blackouts began to occur multiple times, on a weekly basis." (Id.).

Caldwell sought treatment for his condition at the Bay Pines Veterans hospital in St. Petersburg, Florida, and he claims that he fell down two times "on VA Bay Pines healthcare property; one of the two falls required 8-hours treatment at the VA Bay Pines healthcare Emergency Room." (Id. at 10). In May of 2014, Caldwell requested "a medical referral to the Bay Pines office that serves as the primary authority to evaluate veterans' qualification for a power wheelchair." (Id. at 8). However, Caldwell was not issued a power wheelchair.

On August 16, 2014, Caldwell broke his neck in a blackout episode that occurred at Bright House Field in Clearwater, Florida. (Id. at 14). Although the present Complaint does not

2

describe the incident at Bight House Field, Caldwell's initial Complaint explains that he was attending a baseball game on August 16, 2014. (Doc. # 1 at 9). "Prior to the injury, the plaintiff had asked the BHF associate manning section 113 to permit him to sit in the handicap section at the top of the bleacher area. The associate informed the plaintiff that seating in the handicap area requires a special ticket." (Id.). During the game, Caldwell went to the concession stand to buy ice cream, but he blacked out on his way back to his seat: "While descending the bleachers the plaintiff became dizzy, wobbly, and then blackout occurred." (Id.). Caldwell was rushed to the nearest hospital: Countryside hospital of Florida. (Id.). Caldwell had cervical spine surgery at Countryside Hospital at Clearwater, Florida and was transferred to Palms of Pasadena Hospital for rehabilitation on September 2, 2014. (Id.). During this time, a Palms of Pasadena physician diagnosed Caldwell with "Shy Dragger Syndrome," which explained the "episodic dizziness, loss of balance, and subsequent blackouts." (Id.). Caldwell indicates that Shy Dragger Syndrome is "a terminal illness." (Doc. # 32 at 15).

Caldwell provides that, in addition to his physical ailments, he also suffers from mental health issues. Prior to

breaking his neck, Caldwell participated in the "Psycosocial Rehabilitation Recovery Center (PRRC) at Bay Pines." (Id. at 11).  However, after breaking his neck, he was unable to participate in the program. (Id.).  "The absence of mental health care that was provided at the PRRC program led to regression of the plaintiff's mental health state which resulted in returning thoughts of suicide.  The patient had attempted suicide in February 2014." (Id.).  Caldwell, who takes medication for his mental health issues, was institutionalized in Clearwater, Florida for two months. (Id.).

During his September, 2014, stay at Palms of Pasadena, Caldwell "voluntarily agreed to exercise the Baker Act on himself, in order to get a hospital bed at Bay Pines post-rehab." (Id.).  Caldwell explains: "Palms of Pasadena does not have a mental health ward.  The hospital was not equipped to assist a person in need of mental health services." (Id.). According to Caldwell: "For three days in September 2014, the Bay Pines medical center staff flip flopped, lied, and discouraged transfer of the Plaintiff to Bay Pines for much needed mental health support.  The Palms of Pasadena hospital ran out of options thus discharge was enacted on September 13, 2014." (Id.).  Caldwell asserts that "Bay Pines chose to

4

ignore a 90% disable[d] veteran when he screamed out for help." (<u>Id.</u> at 12).

**B.   <u>Caldwell's Dissatisfaction with Services Provided</u>**

Caldwell maintains that he was the victim of "horrendous" and "substandard medical care, incompetence and malpractice." (<u>Id.</u> at 8).  While Caldwell's operative Complaint does not clearly and succinctly list his precise contentions, the Court surmises that he blames the VA for his neck injury based on the VA's alleged failure to diagnose his symptoms and failure to issue a power wheelchair upon his request. He also argues that the VA improperly declined to admit him after he was Baker Acted at Palms of Pasadena.

As for Palms of Pasadena, Caldwell claims that he was not promptly provided prescribed medications upon his hospital admission.  He also alleges that he was discharged in a Palms of Pasadena wheelchair such that he "had to entertain questions in regards to whether or not he had stolen the wheelchair from Palms of Pasadena hospital" causing humiliation. (<u>Id.</u> at 18).

**C.   <u>Caldwell's Legal Action</u>**

On October 30, 2014, Caldwell initiated this action against Suzanne Klinker, Susan Cutchall, Sharon Hayes, and John Timberlake. (Doc. # 1).  In the initial Complaint,

5

Caldwell elaborated that Klinker is the Medical Center Director of the Bay Pines VA Healthcare System, Cutchall is a physician at Bay Pines, Hayes is the Executive Officer of Palms of Pasadena Hospital, and Timberlake is the "GM Operations Manager" for Bright House Field. (Id. at 2-3).

Caldwell maintained that the two VA employees, Klinker and Cutchall, "exhibited gross incompetence, malpractice, and complete disregard for Plaintiff's life, health and welfare, mental state and safety." (Id. at 3). Caldwell further contended that "VA/Bay Pines medical center was negligent in terms of providing quality care to the plaintiff," and that Cutchall engaged in medical malpractice when she determined that "plaintiff was not eligible for a power wheelchair." (Id. at 3, 7).

In addition, Caldwell generally complained that he was inconvenienced when the pharmacist at Palms of Pasadena failed to promptly fill medications and that he was discharged in a Palms of Pasadena wheelchair, rather than his desired power wheelchair. (Id. at 10).

Caldwell also sued Timberlake, a manager for Bright House Field, claiming: "the fact that the staff had denied the plaintiff['s] request to be seated in the handicap section, Bright House Field assumes some responsibility." (Doc. # 1 at

10).

On October 31, 2014, the Court sua sponte dismissed the initial Complaint without prejudice after finding that it lacked subject matter jurisdiction over the case. (Doc. # 5). To that end, the Court elaborated that: "Caldwell does not specifically reference a constitutional amendment or federal statute, and a mere reference to federal law is not enough to establish federal question jurisdiction." (Id. at 3). The Court also carefully explained the requirements for establishing complete diversity of citizenship (28 U.S.C. § 1332) and determined that Caldwell "failed to definitively establish diversity jurisdiction." (Id. at 4). In the initial Complaint, Caldwell indicated that he resides in St. Petersburg, Florida and provided a Florida address for Klinker, Cutchall, Hayes, and Timberlake. (Doc. # 1 at 1).

On November 10, 2014, Caldwell filed his Amended Complaint once again naming Klinker, Cutchall, Hayes, and Timberlake as Defendants. (Doc. # 7). The allegations of the Amended Complaint mirrored those contained in the original Complaint, and Caldwell failed to supplement his jurisdictional allegations.

On December 4, 2014, Hayes, a Palms of Pasadena employee, filed a Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6), 12(b)(1), 9(c), 10(a), 10(b), and 8(a). (Doc. # 12). Among other contentions, Hayes argued that the Amended Complaint failed to "identify or otherwise describe any act or omission committed by Susan Hayes, let alone any act or omission that caused or contributed to Plaintiff's alleged damages or would support a cause of action against Ms. Hayes." (Id. at 2). The Court granted the Motion to Dismiss on December 23, 2014, and authorized Caldwell to file a Second Amended Complaint. (Doc. # 13).

On January 5, 2015, Caldwell filed his Second Amended Complaint naming the following Defendants: U.S. Department of Veterans Affairs, U.S. Department of Health and Human Services, and Hospital Corporation of America, Inc. (Doc. # 18). The Second Amended Complaint generally described Caldwell's dissatisfaction with the medical care he received at Bay Pines and also indicated that Bay Pines should have admitted him when he was Baker Acted at Palms of Pasadena.

Consistent with his prior submissions, Caldwell maintained that Palms of Pasadena (which is apparently owned by Hospital Corporation of America) failed to timely fill his prescribed medications upon his hospital admission and discharged Caldwell in a wheelchair owned by Palms of Pasadena. (Id.).

8

On January 9, 2015, the United States filed a Motion to Dismiss on behalf of the VA and the Department of Health and Human Services. (Doc. # 22).  The Government contended that the Second Amended Complaint was subject to dismissal with prejudice because, as to Caldwell's tort claims against the United States, Caldwell failed to name the United States as a Defendant and failed to exhaust administrative remedies. On January 27, 2015, the Court granted the Government's Motion to Dismiss, but specified that the dismissal was without prejudice and with leave to file a Third Amended Complaint by February 16, 2015. (Doc. # 31).  In granting the Motion to Dismiss, the Court specified:

> A plaintiff bringing a claim against the United States under the FTCA must first present the claim to the appropriate federal agency and wait for the agency to finally deny it.  An agency's failure to dispose of a claim within six months is deemed to be a final denial.  A district court only has jurisdiction over an FTCA action if the plaintiff has met section 2675(a)'s requirements.

(Id. at 6-7). The Court further iterated: "As Caldwell has alleged negligence and malpractice claims against departments of the United States, his failure to set forth his pursuit of administrative remedies, at present, is fatal to his case." (Id. at 7).

Caldwell did not file a Third Amended Complaint by

February 16, 2015.  Rather, on February 17, 2015, Caldwell filed a scathing "response" to the Court's January 27, 2015, Order. (Doc. # 32).  The Court gives Caldwell the benefit of the doubt and will construe his "response" as the Court-Authorized Third Amended Complaint.  Therein, Caldwell names the VA, the Department of Health and Human Services, and Hospital Corporation of America as the Defendants. (<u>Id.</u>).  The construed Third Amended Complaint is not divided into counts, which makes the Court's task in ascertaining the nature of Caldwell's claims a challenge.  Instead of organizing his claims in numbered paragraphs, Caldwell has submitted a rambling 20-page narrative in which Caldwell demands $35 million in damages.

The Government seeks dismissal of the Third Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6). (Doc. # 33).  Caldwell has responded to the Motion. (Doc. # 35).  The Court grants the Motion as explained below.

## II.  <u>Legal Standard</u>

### A.   <u>Rule 12(b)(1)</u>

Federal courts are courts of limited jurisdiction. "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and

should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1299 (11th Cir. 2001).

Motions to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may attack jurisdiction facially or factually. <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 924 n.5 (11th Cir. 2003). When the jurisdictional attack is factual, the Court may look outside the four corners of the complaint to determine if jurisdiction exists. <u>Eaton v. Dorchester Dev., Inc.</u>, 692 F.2d 727, 732 (11th Cir. 1982). In a factual attack, the presumption of truthfulness afforded to a plaintiff under Fed. R. Civ. P. 12(b)(6) does not attach. <u>Scarfo v. Ginsberg</u>, 175 F.3d 957, 960 (11th Cir. 1999)(citing <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990)). Because the very power of the Court to hear the case is at issue in a Rule 12(b)(1) motion, the Court is free to weigh evidence outside the complaint. <u>Eaton</u>, 692 F.2d at 732.

   **B.**   <u>**Rule 12(b)(6)**</u>

On a Rule 12(b)(6), Fed. R. Civ. P., motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to

11

the plaintiff.   Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).   Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.   Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.").   However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted).   In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).   Furthermore, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

**III.** **Analysis**

    **A.**   **FTCA Claims against Government Defendants**

        **1.**   **United States is the Proper Defendant**

In <u>Levin v. United States</u>, 133 S. Ct. 1224, 1228 (2013), the Court explained that the FTCA "gives federal district courts exclusive jurisdiction over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of federal employees acting within the scope of their employment." <u>Id.</u> "Substantively, the FTCA makes the United States liable to the same extent as a private individual under like circumstances, under the law of the place where the tort occurred, subject to enumerated exceptions." <u>Id.</u> Thus, under 28 U.S.C. § 2670(b), the exclusive remedy for a state law tort claim against a federal employee acting within the scope of his or her employment is an action against the United States under the Federal Tort Claims Act. 28 U.S.C. §§ 1346, 2672. Neither the federal employee nor the federal agency is a proper defendant in a FTCA case. <u>See</u> <u>Daniel v. United States Marshal Serv.</u>, 188 F. App'x 954, 956 (11th Cir. 2006)("[T]he United States [is] the only proper defendant, pursuant to the FTCA."); <u>Northwood v. United States</u>, No. 1:13-cv-1196, 2015 U.S. Dist. LEXIS 39182, at *4-5 (N.D. Ala. Mar. 27, 2015) ("It is beyond dispute that the United States, and not the responsible agency or employee, is the proper party defendant in a Federal Tort Claims Act suit.").

13

Here, Caldwell's failure to name the proper Defendant (the United States) after specific instruction on this matter warrants dismissal of his FTCA claims.  The United States, rather than various agencies (such as the VA and the Department of Health and Human Services) is the only proper defendant for tort actions by United States government actors in this case. (Doc. # 31 at 6).  "Although courts liberally construe pro se pleadings, a pro se litigant is required to conform to procedural rules, and a district judge is not required to rewrite a deficient pleading." <u>McFarlin v. Douglas Cnty.</u>, 587 F. App'x 593, 595 (11th Cir. 2014).

## 2.   <u>Administrative Exhaustion Requirement</u>

Even if the Court were to substitute the United States as the appropriate Defendant in place of the VA and the Department of Health and Human Services, Caldwell's tort claims against the United States are nevertheless subject to dismissal because Caldwell has not alleged that he exhausted required administrative remedies prior to initiating this action.

In <u>Slater v. United States</u>, 175 F. App'x 300, 306 (11th Cir. 2006), the court explained that: "The FTCA establishes that as a prerequisite to maintaining a suit against the United States, a plaintiff must present notice of the claim to

the appropriate federal agency." A FTCA claimant satisfies this requirement when he or she "(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim." Brown v. United States, 838 F.2d 1157, 1159 (11th Cir. 1988). The FTCA specifies that a claimant must exhaust these administrative remedies within two years after the claim accrues. Slater, 175 F. App'x at 304.  In medical malpractice cases, such claims "accrue when the plaintiff knows of both the injury and its cause." Id.  "Thus, a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both his injury and its connection with some act of the defendant." Id.

Recently, the Supreme Court indicated that equitable tolling may apply with respect to these deadlines, and that a district court is not automatically deprived of jurisdiction when a FTCA action is untimely filed. United States v. Wong, No. 13-1074, 2015 U.S. LEXIS 2809, at *17 (Apr. 22, 2015)("The time limits in the FTCA are just time limits, nothing more. Even though they govern litigation against the Government, a court can toll them on equitable grounds.").

### 3.   Caldwell's Claims Sound in Tort

In Caldwell's Response in Opposition to the pending

15

Motion to Dismiss, Caldwell appears to argue that his claims against the Government entities are not tort claims and are not malpractice claims, and, thus, he was not required to exhaust administrative remedies.   Specifically, Caldwell submits:

> The defendants' counsel appears to have misread the plaintiff's complaint and or conveniently choose to cheery-pick the wording of the complaint to construe that the plaintiff had filed a 'tort action' complaint against the defendants.  In the lawsuit the plaintiff states on multiple occasions that the lawsuit was an action against multiple defendants for their actions, incompetence, corruption, lack of accountability and lack of ability to accept responsibility for the egregious incompetence associate[d] with the broken spine the plaintiff sustained in February 2014 and again in August 2014.

(Doc. # 35 at 9).

While Caldwell disclaims that he has filed a "tort" action against the United States, each Complaint that he has filed in this Court, including the operative complaint (the construed Third Amended Complaint) repeatedly alleges that VA physicians and personnel committed medical malpractice or otherwise failed to render appropriate medical care to Caldwell.

For instance, in his initial Complaint, filed on October 28, 2014, Caldwell alleged that he received "substandard medical care" and was the victim of "incompetence and

16

malpractice." (Doc. # 1 at 3).  He specifically alleged that Cutchall, a VA physician, committed "malpractice" because "a competent medical professional would have ordered: treatment by a VA/Bay Pines Neurologist or ordered an evaluation to determine the feasibility of a power wheelchair and/or contacted outside doctors." (<u>Id.</u> at 4). He also alleged that "The VA/Bay Pines medical center was negligent in terms of providing quality medical care to plaintiff." (<u>Id.</u> at 5).  He remarked that a physician at Palms of Pasadena diagnosed his condition as "Shy Dragger Syndrome" and asserted that "the physicians at VA/Bay Pines may have arrived at the same diagnoses had Susan Cutchall not tripped over her own incompetence and malpractice when she determined that the plaintiff was not eligible for a power wheelchair." (<u>Id.</u> at 7).

Caldwell's subsequent Amended Complaint, filed on November 10, 2014, contained the same claims regarding medical malpractice as the original Complaint and also reflected his contention that VA personnel (specifically Klinker and Catchall) "exhibited gross incompetence, malpractice, and complete disregard for the plaintiff's life, health and welfare, mental state and safety." (Doc. # 7 at 4). Caldwell's Second Amended Complaint (Doc. # 18), filed on

January 5, 2015, and construed Third Amended Complaint (Doc. # 32), filed on February 17, 2015, also claim that Caldwell was the victim of medical malpractice at the VA. (Doc. # 32 at 8, 10, 16).  For example, Caldwell indicates in the Third Amended Complaint: "The plaintiff has not concluded that VA Bay Pines healthcare caused the SDS diagnosis.  The plaintiff's claim is that staff at VA Bay Pines healthcare failed to initiate proper medical assessments to a medical condition that required a measure of medical expertise." (Id. at 15).

Because Caldwell seeks to sue the Government for medical malpractice, he was required to exhaust administrative remedies prior to filing suit.  However, Caldwell has not alleged that he satisfied the requirement of presenting an administrative claim for a sum certain to the proper agency before filing this lawsuit.

To the extent Caldwell may claim that he satisfied the FTCA's administrative requirements by submitting a memorandum to Sharon Hayes, his contention is not well taken.  Caldwell submits the following discussion in response to the Court's prior order explaining the administrative exhaustion requirements of the FTCA:

One of the most ridiculous statements in the Order:

18

> "*. . . As Caldwell has alleged negligence and malpractice claims against departments of the United States, his failure to set forth his pursuit of administrative remedies, at present, is fatal to his case.*" **. . . . The plaintiff had presented his issues/concerns to DEFENDANT SHARON HAYES on September 12, 2014.  In that document the plaintiff had asserted that Hayes was lining up Palms of Pasadena hospital for a lawsuit.**  The plaintiff made this fact clear in the complaint.  What the hell administrative remedies were available other than a memorandum addressed to Hayes?  Was the plaintiff supposed to bring in a 45mm and light the place up, as an "*administrative remedy*"?  An "administrative remedy" was plaintiff's FIRST course of action, but defendant Hayes was too busy hold up in her office sucking on M&Ms and sipping coke to do her damn job.

(Doc. # 32 at 5)(emphasis in original).

Hayes, an employee of Palms of Pasadena Hospital, is not a Government employee, and Caldwell's presentation of a document to her does not satisfy the administrative requirements of the FTCA.  Caldwell also indicates in his Third Amended Complaint that he "prepared a two page memo" and "hand-carried [it] to the hospital administrator office Suzanne Klinker, which was signed for receipt by her deputy administrator.  Palms of Pasadena hospital did not bother to respond to the memo.  The administrator treated the issues as though they were standing operating procedure at Palms." (Id. at 18).  Although Klinker is a VA employee, Caldwell's submission of a letter to her describing his complaints about

Palms of Pasadena Hospital does not satisfy the requirements of the FTCA.

The Court accordingly dismisses Caldwell's tort claims which may be presented against the Governmental entities in the Third Amended Complaint because Caldwell failed to exhaust administrative remedies as required under the FTCA. The FTCA provides that "an action shall not be instituted upon a claim against the United States for money damages unless the claimant has first exhausted his administrative remedies." McNeil v. United States, 508 U.S. 106, 107 (1993). To the extent Caldwell asserts that his injury accrued in 2014, the Court notes that there is still time for Caldwell to comply with the FTCA's administrative requirements, and, if he intends to do so, he may file a subsequent action after exhausting his administrative remedies.

The Court recognizes that Caldwell may experience some burden in seeking out administrative remedies, and then (assuming that no remedy is provided) refiling his case in this Court. However, the Supreme Court has held that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980). And, while Caldwell is a pro se litigant, rather than

20

an attorney, the application of the law remains the same, and Caldwell is still provided with an opportunity to pursue these avenues in adherence with the FTCA.

### B.   **Constitutional Claims against Government Defendants**

The Third Amended Complaint also appears to allege that the Governmental Defendants violated the Due Process clause of the Fifth and Fourteenth Amendments to the United States Constitution. (Doc. # 32 at 19). The Third Amended Complaint does not contain any allegations which could support a Constitutional violation. However, even if Caldwell had supported his Constitutional claims with factual allegations, they would be subject to dismissal based on the doctrine of sovereign immunity. See McLaughlin v. United States, No. 5:12-cv-375, 2014 U.S. Dist. LEXIS 34310, at *4 (M.D. Fla. March 17, 2014)(the United States "has not waived sovereign immunity from liability for an award of damages arising from an alleged violation of the Constitution.")(citing FDIC v. Meyer, 510 U.S. 471, 485-86 (1994)).

Furthermore, even if Caldwell could plead a waiver of sovereign immunity, he must do more than assert general allegations of medical negligence to establish a constitutional violation. Id. ("[c]onduct that results from accidental inadequacy, that arises from negligence in

diagnosis or treatment, or that constitutes medical malpractice under state law" does not rise to the level of a constitutional violation.). Upon due consideration, the Court dismisses Caldwell's claims against the Governmental Defendants which may be predicated upon a violation of the United States Constitution.

### C.   Hospital Corporation of America

Having dismissed the claims against the United States Governmental Defendants, the Court determines that it is appropriate to decline to exercise supplemental jurisdiction over any state law claims that Caldwell's Third Amended Complaint may attempt to array against Palms of Pasadena's parent corporation, Hospital Corporation of America. See 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."); see also Arnold v. Tuskegee Univ., 212 F. App'x 803, 811 (11th Cir. 2006)("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims.").

Although Caldwell suggests that the Court has diversity jurisdiction over his claims against Hospital Corporation of

America (Doc. # 32 at 3), he has not provided the Court with the information necessary for making a determination regarding complete diversity of citizenship.

In the Court's initial Order sua sponte dismissing Caldwell's Complaint without prejudice for lack of jurisdiction, filed on October 31, 2014, the Court explained:

> In order to demonstrate complete diversity, Caldwell must establish that his citizenship is diverse from the citizenship of every Defendant. As explained in <u>Molinos Valle Del Cibao, C. por A. v. Lama</u>, 633 F.3d 1330, 1342 n.12 (11th Cir. 2011), "citizenship, not residence, is the key fact that must be alleged . . . to establish diversity for a natural person."

(Doc. # 5 at 4).  Caldwell subsequently filed an Amended Complaint that, again, omitted information concerning the parties' citizenship. (Doc. # 7).  On December 23, 2014, the Court entered an Order dismissing the Amended Complaint for lack of subject matter jurisdiction and reiterating the requirements for establishing complete diversity of citizenship. (Doc. # 13).

Despite the Court's repeated instruction, Caldwell has provided a St. Petersburg, Florida address or has otherwise maintained that he is a resident of St. Petersburg, Florida throughout this litigation.  This Court cannot force Caldwell's hand to include information about his citizenship

in his various versions of the Complaint.

In addition, although Caldwell provides the Court with a Nashville, Tennessee mailing address for Hospital Corporation of America, he has not provided information about Hospital Corporation of America's citizenship. A corporation is a citizen of (1) its state of incorporation; and (2) the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). While Caldwell's demand for a multimillion dollar judgment facially satisfies the amount in controversy requirement for complete diversity of citizenship, without information concerning Hospital Corporation of America's state of incorporation and principal place of business, the Court determines that the requirements of complete diversity of citizenship are not met.

In addition, the Court notes that, even if it were to exercise jurisdiction over Caldwell's state law claims against Hospital Corporation of America, those claims, as currently presented, would be subject to dismissal. As previously noted in this Order (as well as in prior Court Orders), Caldwell fails to delineate specific counts or claims against Hospital Corporation of America (or any other Defendant for that matter). The Court has carefully reviewed the construed Third Amended Complaint and all preceding versions of the Complaint

24

and none contain factual allegations supporting a viable claim against Hospital Corporation of America.

Generally, Caldwell indicates that he was admitted to Palms of Pasadena for rehabilitation after he had surgery at another hospital. Apparently, some of his prescription medications were not promptly filled at Palms of Pasadena. Caldwell does not allege that he suffered any harm or damage due to this delay. In addition, he remarks that he was embarrassed because he was discharged in a Palms of Pasadena wheelchair such that he had to "entertain questions in regards to whether or not he had stolen the wheelchair from Palms of Pasadena hospital." (Doc. # 32 at 18).

Even assuming that each and every factual allegation concerning Palms of Pasadena (and, by extension, Hospital Corporation of America) is correct in every respect, Caldwell's allegations amount to petty grievances and provide an account of minor inconveniences that Caldwell countenanced during his time as a Palms of Pasadena patient. And, although Caldwell generally references "malpractice," he has not provided any allegations to support a malpractice claim against Palms of Pasadena or, by extension, Hospital Corporation of America. Caldwell is advised that, "Under Florida law, to prevail in a medical malpractice case a

25

plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed." <u>Woods v. United States</u>, 200 F. App'x 848, 864 (11th Cir. 2006). Caldwell's Third Amended Complaint does not touch upon these elements.

Rather than dismissing Caldwell's state law claims on the merits, the Court declines to exercise supplemental jurisdiction over these claims and dismisses these claims without prejudice.

**IV.  <u>Conclusion</u>**

Even though complaints by pro se plaintiffs are liberally construed, "a pro se litigant is not relieved of his obligation to allege sufficient facts to support a cognizable legal claim and the court may not rewrite a deficient pleading." <u>Osahar v. United States Postal Serv.</u>, 297 F. App'x 863, 864 (11th Cir. 2008); <u>Muhammad v. Bethel</u>, 430 F. App'x 750, 752 (11th Cir. 2011)("a court may not serve as de facto counsel for a party or rewrite an otherwise deficient pleading in order to sustain an action.").

Caldwell has availed himself of four opportunities to state a claim against Defendants in this action, and despite these multiple opportunities, he has not presented a viable

complaint to the Court.  Although Caldwell attempts to array various claims against a multitude of Defendants, it is this Court's observation that the heart of the matter is his contention that the VA failed to provide quality care to address his medical needs, leading to his serious neck injury. The Court has dismissed Caldwell's FTCA claim without prejudice and has provided specific instruction to Caldwell regarding the technical requirements and conditions precedent to bringing a future FTCA action.

Although the dismissal of the present action is without prejudice, the Court declines to authorize further amendment of the pleadings in this action because the Court has determined that Caldwell must exhaust the FTCA's administrative remedies prior to initiating a FTCA action.  In light of Caldwell's failure to exhaust administrative remedies, and failure to cure deficiencies previously identified, the Court finds that any further amendment of the Complaint at this juncture would be futile.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   The Government's Motion to Dismiss Third Amended Complaint (Doc. # 33) is **GRANTED**.

(2)   The Clerk is directed to close the case.

**DONE** and **ORDERED** in Tampa, Florida, this <u>15th</u> day of May

2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel and Parties of Record